**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DEVIN SEATS, #R65374, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 25-cv-00122-SMY |
| | ) |
| ANTHONY WILLS, | ) |
| MARY WILSON, | ) |
| CARRIE MORRIS, | ) |
| ERIN NICHOLSON, and | ) |
| MR. B., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Devin Seats, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pontiac Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while he was incarcerated at Menard Correctional Center.  He claims defendants denied him all access to yard while he was in segregation, which worsened his mental health symptoms.  He seeks monetary damages.  (Doc. 1).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed.  28 U.S.C. § 1915A(b).

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1):  Plaintiff was housed

1

in segregation at Menard from November 27, 2023 until December 11, 2024 (Doc. 1, p. 6).  While

inmates in general population and protective custody were allowed yard time, Defendant Warden

Wills did not permit Plaintiff and other inmates in segregation to go to yard.  Wills claimed a

shortage of staff prevented him from allowing yard for those in segregation.  For nearly 13 months,

Plaintiff was confined to his cell for 24 hours per day (Doc. 1, p. 7).  He was denied access to

natural air, sunlight, exercise, and recreational time.

Plaintiff is seriously mentally ill, and these conditions of his confinement caused him to

engage in self-harming behavior, including cutting his arm and wrist, and inserting objects inside

his private area (Doc. 1, p. 7).  On one occasion, Plaintiff required treatment at an outside hospital

after he self-harmed (Doc. 1, p. 8).

Defendant Dr. Mary Wilson, the head of Menard's Mental Health Department, failed to

ensure that Plaintiff received out-of-cell time and yard (Doc. 1, p. 7).  Wilson knew that Plaintiff

was supposed to get "extra or basic" yard and recreational access because of his mental health

diagnosis.  *Id.*  Wilson also failed to provide Plaintiff with group mental health sessions.

Defendant Carrie Morris was Plaintiff's mental health caseworker.  She responded to

Plaintiff's request slips and grievances over the denial of yard but ignored the problem and failed

to ensure he was given yard access (Doc. 1, p. 8).  Morris failed to provide adequate mental health

services to Plaintiff.

Defendant Erin Nicholson was the primary mental health professional assigned to Plaintiff

(Doc. 1, p. 9).  He "constantly" informed her that he was not getting yard access.  During Plaintiff's

time in segregation, Nicholson held one-on-one sessions with him.  However, Nicholson failed to

call him out for group mental health sessions and allowed security staff to falsely tell her Plaintiff

refused to leave his cell.  Nicholson ignored Plaintiff's basic mental health needs, causing him to

suffer physical and mental harm.  She never advocated for Plaintiff to attend yard or group sessions, claiming the shortage of staff prevented those activities (Doc. 1, p. 9).

Defendant Mr. B. is a mental health professional at Menard.  He along with the other defendants denied Plaintiff access to yard/recreation (Doc. 1, pp. 3, 6).  Plaintiff told Mr. B on several occasions that he was not getting yard access or group mental health treatment (Doc. 1, p. 10).  Mr. B. responded that this was due to a staff shortage, and Plaintiff should write grievances over the matter.  Mr. B. was well aware of Plaintiff's serious mental illness but failed to take measures to ensure he had access to yard and group therapy.

The defendants inflicted emotional distress on Plaintiff by denying him access to the yard and time outside his cell.

 Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

| | |
|---|---|
| Count 1: | Eighth Amendment cruel and unusual punishment claim against all defendants for denying Plaintiff access to yard and out-of-cell exercise/recreation at Menard between November 27, 2023 and December 11, 2024. |
| Count 2: | Eighth Amendment deliberate indifference to serious mental health needs claim against Wilson, Morris, Nicholson, and Mr. B for failing to provide adequate mental health care to Plaintiff during the time he was in segregation and was denied yard and out-of-cell time, between November 27, 2023 and December 11, 2024. |
| Count 3: | State law claim for intentional infliction of emotional distress against all defendants for the conduct described in Counts 1 and 2. |

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is

plausible on its face.").

## Discussion

### Count 1

Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment.[1]  *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981).  To state an Eighth Amendment claim for unconstitutional conditions of confinement, Plaintiff must plead facts suggesting he was denied "the minimal civilized measure of life's necessities," creating an excessive risk to his health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  He must also sufficiently plead that the defendant exhibited deliberate indifference to a substantial risk of serious harm to the inmate, despite the defendant's knowledge of the bad conditions.  *Farmer*, 511 U.S. at 837, 842.  A prolonged denial of exercise opportunities may amount to an Eighth Amendment violation.  *See Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013); *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001).

Plaintiff alleges an objectively serious deprivation.  He was prevented from going outside for yard and had no opportunity for out-of-cell exercise for over a year, and claims these conditions had serious consequences on his mental health to the extent that he self-harmed on several occasions.  He also alleges that each defendant was aware of his serious mental illness and the adverse effects the yard deprivation had on his mental health.  These factual allegations are sufficient for Plaintiff's Eighth Amendment claim to proceed against all defendants.  If "Mr. B." is unable to be identified to receive notice of this lawsuit, Plaintiff may need to provide further

---

[1] Plaintiff also invokes the Due Process Clause of the Fourteenth Amendment in connection with his claims and asserts he was discriminated against because he was in segregation (Doc. 1, pp. 6-9).  These claims are dismissed as duplicative of the Eighth Amendment deliberate indifference claims and will not be discussed further.  *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (claims are to be analyzed under the most explicit sources of constitutional protections).

identifying information on this individual.

**Count 2**

Prison officials and medical staff violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical or mental health needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001). To state such a claim, a prisoner must plead facts and allegations suggesting that (1) he suffered from an objectively serious medical or mental health condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.*

Plaintiff alleges that mental health professionals Wilson, Morris, Nicholson, and Mr. B. were aware of his serious mental illness but failed to provide him with adequate treatment to mitigate his risk of self-harm for over a year. These allegations are sufficient for Plaintiff to proceed on the claim in Count 2 against these four providers.

**Count 3**

Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant(s) intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).

Plaintiff claims that he suffered severe emotional distress and that defendants acted intentionally in denying him yard and out-of-cell time. However, the defendants' conduct as

described by Plaintiff is not objectively "extreme and outrageous." Accordingly, Count 3 will be dismissed without prejudice.

## Disposition

The Complaint states colorable claims in Count 1 against Wills, Wilson, Morris, Nicholson, and Mr. B.; and in Count 2 against Wilson, Morris, Nicholson, and Mr. B. Count 3 is **DISMISSED** without prejudice.

The Clerk shall prepare for Anthony Wills, Mary Wilson, Carrie Morris, Erin Nicholson, and Mr. B. (mental health professional): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues**

**stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED: April 7, 2025**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel

has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.